UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| STEVEN D. IRVIN, | Case No. 2:15-CV-2002 JCM (PAL) |
| Plaintiff(s), | ORDER |
| v. | |
| CATHERINE C. MASTO, et al., | |
| Defendant(s). | |

Presently before the court are *pro se* plaintiff Steven D. Irvin's *ex parte* motion for a temporary restraining order and *ex parte* motion for an order to show cause for why a preliminary injunction should not issue.[1] (Doc. ## 8, 9). Mr. Irvin has also filed a section 1983 complaint. (Doc. # 8). Because the motions and complaint were filed *ex parte*, defendants Attorney General Catherine C. Masto, James M. Wright, and Patrick Saunder have not filed responses in opposition.

I.   **Background**

Plaintiff, who was convicted of certain crimes of a sexual nature in the past, moved to Las Vegas, Nevada, in or about April of 2015. (Doc. # 9 at 23). On April 22, 2015, Mr. Irvin registered as a sex offender with the State of Nevada. (*Id.*).

On September 25, 2015, Mr. Irvin received a letter from the Nevada Department of Public Safety ("NDPS"). (Doc. # 11 at 4). He was informed that his criminal history had been reviewed, and that the department had designated him at a "Tier 3 level of community notification pursuant to NRS 179D.730(3)." (*Id.*). On that same day, plaintiff contacted NDPS to ask for an opportunity to contest or appeal the designation. (*Id.*). He also asked for the applicable law under which he was designated as a "tier 3" offender. (*Id.* at 4–5).

---

[1] The court will refer to plaintiff's "motion for an order to show cause why a preliminary injunction should not issue" as simply "a motion for preliminary injunction."

James C. Mahan
U.S. District Judge

1    Mr. Irvin was told to contact defendant Patrick Saunder regarding his inquiry. (*Id.* at 5).

2    Irvin did so. Not satisfied with Mr. Saunder's response, plaintiff also contacted Paul Mortinsen.

3    (*Id.*). Mr. Mortinsen informed him by e-mail that the applicable provisions of state law applying

4    to his designation are Nevada Revised Statute ("NRS") sections 179D.730 and 179D.740. (*Id.*).

5    Mr. Mortinsen also indicated that the reason these statutes do not appear in the current edition of

6    the NRS is because Assembly Bill ("AB") 579 repeals those statutes. (*Id.*). He went on to explain

7    that AB 579 was struck down by courts before it could be implemented. Accordingly, the state of

8    Nevada is currently still applying NRS 179D.730, 179D.740, and the other sections of the NRS

9    that AB 579, if implemented, would repeal. (*Id.*). Since that time, Mr. Irvin, and his attorney

10   Charles Kilgore, have had numerous discussion with Mr. Saunder about the applicable law. (*Id.* at
     5–7).

11   Still concerned about the application of the registration laws, Mr. Irvin contacted the

12   attorney general's office. (*Id.* at 7). A staff member there allegedly told plaintiff that Mr. Saunder

13   misunderstood the law, based solely on Irvin's characterization to her of his discussions with Mr.

14   Saunder. (*Id.*).

15   On October 15, 2015, the NDPS issued a community notification about Mr. Irvin's status

16   as a sex offender. (*Id.* at 8). Irvin's landlord evicted him based on the notification. (*Id.* at 8). Before
     and after moving out of that residence, Mr. Irvin has allegedly been harassed by strangers based

17   on the community notification. (*Id.* at 8).

18   Mr. Irvin disputes his classification as a tier 3 offender, arguing that the classification was

19   based on mistake by the NDPS. (Doc. # 9 at 6). NDPS allegedly mistook Mr. Irvin's California

20   sexual assault convictions for crimes against adult victims as convictions for crimes against victims

21   under the age of fourteen. (*Id.*). He alleges that he was designated as a tier 3 offender based on that

22   mistake. (*Id.*). The NDPS maintains that is not the case.

23   In any event, after he complained to the Las Vegas Metropolitan Police Department

24   ("LVMPD") about the mistake and provided them with documentation of his actual convictions,
     information about Mr. Irvin was removed from the public website. (*Id.*).

25   On November 28, 2015, plaintiff received a notice of a January 19, 2016, public hearing

26   for a "Tier Level Risk Assessment Reconsideration hearing." (*Id.* at 7). He complained to NDPS

27   that the hearing was moot because he should never have been classified as a tier 3 offender, based

28   on the alleged mistake described above. (*Id.*). An NDPS office manager contacted Mr. Irvin and

**James C. Mahan**
**U.S. District Judge**

1    informed him that no mistake had been made, and that he is legally required to attend the hearing
2    if he desires to contest his tier level assessment. (*Id.*). She informed him that if he failed to appear,
3    he would be placed back on the website as a tier 3 offender. (*Id.*).

4        Mr. Irvin's complaint (doc. # 11) alleges that the NDPS is applying specific NRS statutes
5    against him in violation of this court's permanent injunction (doc. # 77) in the case *ACLU v. Masto*
6    *et al.*¸ case no. 2:08-cv-00822-JCM-PAL (the "ACLU case"). He also asserts that his classification
7    as a tier 3 sex offender by Mr. Saunder's office was made in retaliation to his inquiry about Mr.
8    Saunder's application of the law to the attorney general. Based on those allegations, he asserts that
9    he has been denied equal protection under the Fourteenth Amendment to the United States
     Constitution.

10       Plaintiff's *ex parte* motion for a temporary restraining order and motion for a preliminary
11   injunction allege that he is suffering irreparable and immediate harm due to the fact that he has
12   already been misclassified as and continues to be designated as a tier 3 sex offender. He also
13   contends that defendants' alleged violation of this court's permanent injunction order creates an
14   irreparable and immediate injury.

## II.    Legal Standard

15       Under Federal Rule of Civil Procedure 65, a court may issue a temporary restraining order
16   when the moving party provides specific facts showing that immediate and irreparable injury, loss,
17   or damage will result before the adverse party's opposition to a motion for preliminary injunction
18   can be heard.  Fed. R. Civ. P. 65.

19       "The purpose of a temporary restraining order is to preserve the status quo before a
20   preliminary injunction hearing may be held; its provisional remedial nature is designed merely to
21   prevent irreparable loss of rights prior to judgment." *Estes v. Gaston*, No. 2:12-cv-1853-JCM-
22   VCF, 2012 WL 5839490, at *2 (D. Nev. Nov. 16, 2012) (citing *Sierra On-Line, Inc. v. Phoenix*
23   *Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984)). "Thus, in seeking a temporary restraining
24   order, the movant must demonstrate that the denial of relief will expose him to some significant
25   risk of irreparable injury." *Id.* (quoting *Associated Gen. Contractors of Cal. v. Coal. of Econ.*
     *Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991)).

26       The Supreme Court has stated that courts must consider the following elements in
27   determining whether to issue a temporary restraining order and preliminary injunction: (1) a
28   likelihood of success on the merits; (2) likelihood of irreparable injury if preliminary relief is not

**James C. Mahan**
**U.S. District Judge**

- 3 -

1  granted; (3) balance of hardships; and (4) advancement of the public interest. *Winter v. N.R.D.C.*,

2  129 S. Ct. 365, 374–76 (2008).

3        Additionally, post-*Winter*, the Ninth Circuit has maintained its serious question and sliding

4  scale test. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011). "Under

5  this approach, the elements of the preliminary injunction test are balanced, so that a stronger

6  showing of one element may offset a weaker showing of another." *Id.* at 1131. "Serious questions

7  going to the merits and a balance of hardships that tips sharply towards the plaintiff can support

8  issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood

9  of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

**III.   Discussion**

10        The court will first address whether such immediate and irreparable injury, loss, or damage

11  will occur that a temporary restraining order should issue without notice to the named defendants.

12  The motion for preliminary injunction will then be discussed.

13       *A.    Immediate and irreparable injury*

14        The court finds that no immediate and irreparable injury will occur. Based on Mr. Saunders

15  allegations, it appears that Irvin may have been improperly classified as being convicted of a sexual

16  crime involving a minor on the NDPS public sex registry website. For at least two weeks, this

17  profile of Mr. Irvin remained publicly available on the NDPS website. However, after plaintiff

18  complained to LVMPD and provided proof that the classification was made in error, his profile

was removed from the website.

19        According to his own complaint and affidavit, Mr. Irvin has been removed from the website

20  and his criminal history is now available only to law enforcement. (Doc. # 9 at 6–7). Based on

21  plaintiff's own allegations, the injurious information is not immediately available to the public.

22  Plaintiff does not, therefore, allege any immediate injury with respect to his claims about

23  misclassification. His reassessment hearing will provide a public opportunity to establish his

24  lawful tier level to avoid any future harm ensuing from mistakes by either the NDPS, the attorney

general, or LVMPD.

25        As explained further below, the court finds that neither the attorney general nor the NDPS

26  is violating the court's permanent injunction in the ACLU case, and the attorney general is properly

27  applying NRS 179D.730 and 170D.740. (*See* doc. # 77, *ACLU v. Masto*, case no. 2:08-cv-00822-

28

**James C. Mahan**
**U.S. District Judge**

JCM-PAL). Therefore, plaintiff is not suffering any immediate and irreparable harm with respect to this claim about the applicable law.

Plaintiff has failed to "demonstrate that the denial of relief will expose him to some significant risk of irreparable injury." *Associated Gen. Contractors*, 950 F.2d at 1410. His motion for a temporary restraining order will thus be denied.

*B. The motion for preliminary injunction will be denied.[2]*

Mr. Irvin bases his request for a preliminary injunction on his allegations that the attorney general's office and NDPS are applying NRS 179D.730 and 179D.740 in violation of this court's permanent injunction order in the ACLU case. He also argues that he has been misclassified as a tier 3 offender under those laws in retaliation for his inquiries about the applicable law. Those allegations will be discussed with respect to each of the four *Winter* factors in turn.

### i.     Likelihood of success on the merits

The court finds that Mr. Irvin is not likely to succeed on the merits of his Fourteenth Amendment claim. First, Mr. Saunder, the NDPS, and the attorney general's office are properly applying NRS 179D.730 and 179D.740. Second, based on the information provided in Mr. Irvin's own sexual offender registration form, the accuracy of which he does not contest, Mr. Irvin classifies as a tier 3 offender under NRS 179D.730. His allegations that he was so classified in retaliation for his inquiries are therefore baseless.

*a.     Application of NRS 179D.730 and 179D.740 is appropriate.*

AB 579, *inter alia*, repeals certain portions of NRS 179D, including NRS 179D.730 and 179D.740. That means that to the extent this court's October 7, 2008, order is still valid with respect to AB 579, compliance with the court's order would actually *compel* enforcement of the statutes Mr. Irvin challenges, not enjoin it. However, that order is not valid with respect to AB 579 because on February 10, 2012, the Ninth Circuit reversed this court's finding that AB 579 is unconstitutional. *See Am. Civil Liberties Union of Nevada v. Masto,* 670 F.3d 1046, 1067 (9th Cir. 2012).

---

[2] Ordinarily the court would provide the defendants with notice and an opportunity to respond to the preliminary injunction before holding a hearing to determine whether it should issue. Based on the discussion below, however, the motion will be denied. Because it will be denied, defendants will not suffer prejudice. The court therefore finds the motion ripe for adjudication.

James C. Mahan
U.S. District Judge

- 5 -

Despite winning its appeal with respect to AB 579, however, the attorney general's office has still not implemented AB 579. *S. Comm. on Judiciary*, 78th Sess., Testimony of Kimberly A. Buchanan at 4–7 (Nev. March 19, 2015). In separate suits from the ACLU case heard in this court, the bill was also challenged in the Nevada state courts. (*Id.*). One of those challenges is still pending. (*Id.*). Accordingly, on January 30, 2014, the Nevada Supreme Court stayed implementation of AB 579. (*Id.*). That stay is still pending. (*Id.*).

Because AB 579 has never been implemented, the state of Nevada continues to properly apply the statutory framework that existed prior to its passing, including NRS 179D.730 and 179D.740. This is precisely *because of* challenges to the bill's constitutionality, not *in spite of* them.

b.      *Mr. Irvin classifies as a tier 3 offender under NRS 179D.730*

"A sex offender must be assigned a tier 3 level of notification if the sex offender has been . . . [c]onvicted of two sexually violent offenses and one or more nonsexually violent offenses, and at least two of the offenses were brought and tried separately." NRS 179D.730(3)(c).

Mr. Irvin registered with the State of Nevada as a sex offender on April 22, 2015. (*See* doc. # 8 at 23–31). On his registration form, he indicated that he was (a) convicted of rape by force and threat in Torrance, California, in 1979 and (b) convicted of oral copulation by force or threat in Torrance, California, in 1984. (*Id.*). He also indicated that he was convicted of attempted murder in Torrance, California, in 1979. (*Id.*). The first two convictions qualify as sexually violent offenses, while the latter qualifies as a nonsexually violent offense under relevant Nevada law. *See* NRS 179D.420 and 179D.730(5)(d).

Irvin does not dispute the convictions described above—in fact, he listed them in the sex offender registration form he completed and signed on April 22, 2015. Based on those convictions, he classifies as a tier 3 sex offender. Because he is, in fact, a tier 3 offender under applicable law, his classification as such by NDPS, Mr. Saunder, and any other NDPS employees cannot be a retaliatory action that would support an equal protection claim.

ii.      **Likelihood of irreparable Injury**

The court finds that there is little likelihood of irreparable injury. As discussed above, any injury caused by any misinformation on the NDPS website is neither ongoing nor immediate because Mr. Irvin has been removed from the website. Furthermore, any allegations that plaintiff is being injured by defendants' supposed violation of the court's permanent injunction in the

**James C. Mahan**
**U.S. District Judge**

ACLU case are unfounded because (a) that order was reversed with respect to the provisions at hand, and (b) the defendants are actually complying with it regardless of the reversal, due to ongoing litigation in other courts.

### iii.   Balance of the hardships

The balance of the hardships weighs in the defendants' favor. Placing any kind of injunction on the enforcement of essentially the entire statutory framework that the State of Nevada uses to require registration of convicted sex offenders would place an incredible administrative burden on the NDPS and attorney general's office. Mr. Irvin, on the other hand, already has a hearing scheduled for January 19, 2016, at which he can publicly argue against his alleged misclassification. In the meantime, the NDPS has not indicated that it will pursue further community notification.

### iv.   Advancement of the public interest

The public has an interest in both the civil rights of convicted felons and the notification of the presence of convicted sex offenders in its communities. As discussed above, Mr. Irvin's allegations of the unlawful application of state law by Nevada's attorney general and retaliatory tactics by the NDPS are not supported by the facts he alleges. In fact, it is clear from the copy of his own sex offender registration form that he included with his filings that he does qualify as a tier 3 sex offender under the applicable law.

The interest of the public therefore weighs towards denial of the motion. Granting the relief Mr. Irvin requests in his preliminary injunction would effectively prevent the attorney general from enforcing *any* sex offender registry laws, given that AB 579 has not been implemented. Moreover, it would prevent community notification indefinitely with respect to Mr. Irvin, who bases his allegations of misclassification on a misunderstanding of the state of the law. The facts he alleges support his tier 3 classification and the respective community notification.

## IV.   Conclusion

Having considered the *Winter* factors, the court applies the sliding scale approach and determines that plaintiff's motions for a temporary restraining order and for a preliminary injunction should be denied. *See Alliance for the Rockies,* 632 F.3d 1131. There are no serious questions weighing in plaintiff's favor. *Id.* at 1135. The motions will therefore be denied.

. . .

. . .

James C. Mahan
U.S. District Judge

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that *pro se* plaintiff Steven D. Irvin's *ex parte* motion for a temporary restraining order (doc. # 8) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that *pro se* plaintiff Steven D. Irvin's *ex parte* motion for an order to show cause for why a preliminary injunction should not issue (doc. # 9) be, and the same hereby is, DENIED.

DATED January 11, 2016.

UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge